378 A.2d 326

**COMMONWEALTH of Pennsylvania**

v.

**Curtis Wayne HUGHLETT, Appellant.**

Superior Court of Pennsylvania.

Argued June 18, 1976.

Decided Oct. 6, 1977.

Keith L. Kilgore, Lebanon, with him William R. Pouss, Lebanon, for appellant.

Thomas S. Long, Lebanon, with him George E. Christianson, District Attorney Lebanon, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

WATKINS, President Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Lebanon County by the defendant-appellant, Curtis Wayne Hughlett, after conviction of involuntary deviate sexual intercourse with Faye Behney, aged 11, and involuntary deviate sexual intercourse with Shirley Behney, aged 15. Post-trial motions were denied and he was sentenced to pay a $200.00 fine and undergo imprisonment of not less than six (6) months nor more than twelve (12) months.

The court below has succinctly stated the evidence supporting the verdict as follows:

"Curtis Hughlett on August 11, 1973 moved into the home of Mrs. Myrle M. Behney in Union Township, Lebanon County, to live with her and her two daughters, Faye, 11 years old and Shirley, 15 years old. He slept downstairs; Faye and Shirley slept upstairs. In the intervening time until he moved out on December 22, 1973, Faye sucked his penis during afternoons in the upstairs of the house in the frequency of once a month. Hughlett would go upstairs, tell Faye to bring him a cup of coffee and, on her return with it, have her perform the act complained of, the coffee going undrunk. On one occasion he undressed her. After the Defendant moved away in December, 1973 he returned to the Behney home periodically until July, 1974 when the acts were repeated; only then, the Defendant used the ruse of looking for pennies in Faye's bedroom to get her there.

"Furthermore, 'a couple of months' after moving into the Behney home Hughlett at night after returning from work told Shirley to get him a cup of coffee. When she took it to him in the front room where he was going to sleep that evening, he told her to undress, removed his trousers and had intercourse with her on the couch. He had intercourse with her once more 'a couple of months later'. During his residency in the Behney home he also had Shirley perform fellatio on him five times, twice in the company of Faye when the young girls 'took turns'."

The appellant claims that the prosecution should have been barred under Section 3105 of the Pennsylvania Criminal Code, which stated:

"No prosecution may be instituted or maintained under this chapter unless the alleged offense was brought to the notice of a public authority within three months of its occurrence or, where the alleged victim was less than 16 years old or otherwise incompetent to make complaint, within three months after a parent, guardian or other competent person specially interested in the victim learns of the offense."

Based on this claim, the appellant filed a pre-trial application for relief in the nature of a petition to quash the indictment, alleging there was no prompt complaint under the act.

A hearing was held and the court found as a fact that the mother of the victim learned of her daughters problems on September 15, 1974, and told members of the Pennsylvania State Police on October 23, 1974, well within the three month requirement. The court further stated: "The record of the subsequent trial, taken as a whole, reveals nothing to compel us to change that decision. Hence, the trial on the merits in this case was proper."

The appellant complains that he was deprived of an opportunity to present a defense by the prosecution's failure to fix the dates of the alleged offenses with sufficient particularity, thus violating his constitutional rights.

The court below answered this complaint as follows:

"It is true the indictment states, '. . . on or about August, 1973 to June 1974 . . .' occurred the offenses set forth in Count I and '. . . on or about August of 1973 to the end of December of 1973 . . .' occurred the offenses in Count III (the second of two counts for which Defendant was put on his trial).

"However, without treating the merits of the argument let us invite the attention of Defendant to the Act of March 31, 1860 P.C. 427, Sec. 11, 19 P.S. 431 which provides: 'Every objection to any indictment for any formal defect, apparent on the face thereof, shall be taken by demurrer, or on motion to quash such indictment, before the jury shall be sworn and not afterwards; . . .' Here, Defendant neither demurred to nor moved to quash the indictment, and it is too late to argue the point now. See, *Commonwealth v. Mitchell*, [234 Pa.Super. 21] 335 A.2d 521 (1975) and cases cited therein. Nor is Defendant's allegation of counsel's inexperience a valid excuse. The Pennsylvania Rules of Criminal Procedure are available to *all* legal counsel for their perusal and edification. Accordingly, this reason must fall."

The appellant next complains that the court below abused its discretion in finding Faye Behney, at that time 12 years of age, competent to testify.

The court below carefully examined the girl and her testimony disclosed that she was in the seventh grade; that she knew what oath meant; that she would swear to tell the truth and that if she failed to tell the truth she would go to hell. The court below said: "The court in this instance had first-hand opportunity to question Faye Behney on her comprehension of truth and falsehood and the solemnity of an oath but it observed her during the colloquy. It was then and is now convinced she was competent." We find that the court below did not abuse its discretion in determining the competency of Faye Behney. See, *Commonwealth v. Rimmel*, 221 Pa.Super. 84, 289 A.2d 116 (1971).

The appellant also contends that the court erred in ruling certain alleged threats made by the victim's father to involve him in those charges, to be hearsay and inadmissible. The court below disposed of this issue as follows:

"Abundant case law supports the maxim, 'The hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted.' Here Defendant would have us believe he was offering the testimony only to prove the statement's existence. He wanted to show with a statement by a third party he was threatened with involvement, presumably to prove his innocence. Yet, the statement itself constituted a threat. It boggles the mind to attempt to reason how it could be admitted for the purpose of showing that a threat existed without showing by its content that it was a threat! There is no merit in that argument."

Further, no defense exists in the contention of the appellant that the victims' consented and did not object or resist. As the court below said: "It is axiomatic that females under the age of 16 may not legally assent to sexual acts of this or any kind."

The argument by the appellant that the evidence was insufficient to support the verdict and against the weight of the evidence is without merit. *Commonwealth v. Johnson*, 458 Pa. 23, 326 A.2d 315 (1974).

 Where there is conflicting evidence, the credibility of witnesses is solely for the jury; if its findings are supported by the record, the trial court's denial of a new trial will not be disturbed. It is true that the testimony was conflicting, but the jury chose to believe the witnesses produced by the Commonwealth resolving the conflicts in favor of the Commonwealth. We agree with the court below after reviewing the record that the evidence was sufficient to sustain the conviction of the appellant. *Commonwealth v. Zapata*, 447 Pa. 322, 290 A.2d 114 (1972).

Judgment of sentence is affirmed.

HOFFMAN, J., files a dissenting opinion.

HOFFMAN, Judge, dissenting:

Appellant was convicted by a jury on March 12, 1975, of involuntary deviate sexual intercourse with two minor girls. He bases his appeal on five issues: (1) the verdict is against the weight of the evidence; the evidence is insufficient, (2) the victims failed to report the incidents promptly, (3) the victims failed to specify the dates on which the incidents occurred, (4) one of the victims was incompetent to testify, (5) certain testimony excluded by the lower court is not hearsay. The Majority affirms the lower courts' denial of an arrest of judgment and a new trial. I dissent.

It is clear that to "sustain a conviction, the facts and circumstances which the Commonwealth prove must be such that every essential element of the crime is established beyond a reasonable doubt. . . . The conviction must be based on more than mere suspicion or conjecture." *Commonwealth v. Roscioli*, 454 Pa. 59, 62, 309 A.2d 396, 398 (1973). It is true that "[i]n considering motions of defendants for a new trial and in arrest of judgment following conviction, the court must accept as correct the testimony submitted by the Commonwealth as well as the reasonable

inferences which can properly be drawn therefrom." *Commonwealth v. James,* 197 Pa.Super. 110, 113, 177 A.2d 11, 13 (1962). But [i]f "the conviction is based wholly on inferences, suspicion and conjecture, it cannot stand." *Commonwealth v. Simpson,* 436 Pa. 459, 464, 260 A.2d 751, 754 (1970).

In the instant case I would hold that the verdict is against the weight of the evidence. The eleven and fifteen year old victims herein made no immediate outcry against the appellant. There was a delay of over one year between the occurrence of the first incident and the time that it was reported to any adult. In fact, the girls first charged their father with the crime. They later recanted and said that appellant was the perpetrator.

Further, the testimony at trial by the two victims with respect to vital evidence is extremely contradictory and confused, especially as to the dates when the acts of oral intercourse occurred and as to the number of incidents. The girls were uncertain of the year, month, day, and time of the incidents. Their trial testimony also contradicted their testimony at a preliminary hearing and at a motion to quash the indictment. There was absolutely no testimony by either girl of an actual date upon which a sexual act occurred and thus, appellant had no adequate opportunity to prepare his defense. Additionally, there is a serious question as to the competency of the younger girl to testify.

The tests for competency of a minor witness were summarized in *Rosche v. McCoy,* 397 Pa. 615, 620–621, 156 A.2d 307, 310 (1959): "There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that she is called to testify about and (3) a consciousness of the duty to speak the truth." In the instant case the young victim exhibited confusion when asked simple questions on direct and cross-examination. In some instances she failed to make any audible response to questions, and on cross-examination, she could not frame an answer to several questions concerning

what the appellant did with her. At times, she seemed to lose her memory altogether.

Based upon all of these factors and in the interests of justice, I would reverse the judgment of sentence and remand for a new trial.