418 A.2d 1336

**COMMONWEALTH of Pennsylvania**

v.

**Joseph DOYLE, Appellant.**

Superior Court of Pennsylvania.

Submitted March 31, 1978.

Filed Oct. 19, 1979.

Nicholas A. Clemente, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for the Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CER-
CONE, PRICE, VAN der VOORT, SPAETH and HESTER,
JJ.

SPAETH, Judge:

Appellant was convicted by a judge sitting without a jury
of statutory rape, involuntary deviate sexual intercourse,
and on three counts of corrupting the morals of minors. He
was sentenced to prison for terms of 11½ to 23 months on
one count of corrupting the morals of a minor and to 6½ to
13 months on the other two counts of corrupting. The two
6½ to 13 month sentences were concurrent with each other
but consecutive to the 11½ to 23 month sentence. Appellant
was also sentenced to two five year terms of probation on
the statutory rape and involuntary deviate sexual inter-
course convictions. The sentences of probation were concur-
rent with the prison sentences. Appellant's petition to re-
consider his sentences was denied by the trial judge and he
appealed to this court. Pending disposition of the appeal,
the sentences were stayed.

On appeal appellant argued (1) that the evidence was
insufficient to sustain his conviction of involuntary deviate
sexual intercourse and (2) that the sentences were manifest-
ly excessive. On March 16, 1979, this court entered on order
affirming appellant's convictions but remanding for a recon-
sideration of the sentences imposed. In the opinion accom-
panying this order we rejected appellant's argument that
the evidence was insufficient to sustain his conviction of
involuntary deviate sexual intercourse, and stated that we
were remanding for resentencing because the record then
before us contained no statement of reasons for the sen-
tences, as required by *Commonwealth v. Riggins*, 474 Pa.
115, 377 A.2d 140 (1977).

On April 2, 1979, the Commonwealth petitioned this court
to reconsider the order of vacation and remand. In its
petition the Commonwealth alleged that at the sentencing
hearing, which was on April 21, 1977, the trial judge had
stated the reasons for the sentences, but that the transcript

of that hearing had not been included in the record transmitted to this court on appeal. We stayed the order of vacation and remand, and instead remanded so that the record, if incomplete, might be completed. The lower court thereupon included the missing sentencing transcript, and the record was returned to this court.

On July 18, 1979, we granted the Commonwealth's petition for reconsideration of our order of vacation and remand, and granted appellant and the Commonwealth leave to file new briefs on the sentencing issue within thirty days. Now, with a complete record before us, we shall consider appellant's claim that his sentences were excessive. However, since our earlier opinion has not been published, we shall first say why we rejected appellant's argument that the evidence was insufficient to sustain his conviction of involuntary deviate sexual intercourse.

## 1

The evidence may be stated as follows: In June 1975, Carolyn, a thirteen year old, went with her friend Sue to the Osborne Apartments in Philadelphia to see appellant concerning a summer job. Appellant gave the girls the job of cleaning and dusting the hallways of the apartment house. He paid them five dollars for their work, and also gave them cigarettes and soda. When Carolyn and Sue returned to the apartment house the next day, appellant offered them ten dollars to engage in a sexual act with him. They refused but on a subsequent visit appellant had the girls remove their clothes and committed oral sex with them. He paid them five dollars for this. He also engaged in sexual intercourse with Carolyn on several different occasions during that same summer, and gave her money, cigarettes, and a bottle of Vodka. On other occasions appellant had Carolyn, Sue, and other girls from the area in his apartment to view some sexually explicit movies. These other girls were Donna, age thirteen, Linda, age fifteen, and Judy, age thirteen. Carolyn, Donna, Linda, and Judy all testified concerning these incidents.

In testing the sufficiency of evidence, we first accept as true all the evidence upon which the finder of fact could

have reached its verdict, and then, after giving the Commonwealth the benefit of all reasonable inferences arising from that evidence, we ask whether the evidence, and the inferences arising from it, are sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. *Commonwealth v. Williams*, 468 Pa. 357, 365, 362 A.2d 244, 248 (1976); *Commonwealth v. Carbonetto*, 455 Pa. 93, 314 A.2d 304 (1974); *Commonwealth v. Burton*, 450 Pa. 532, 301 A.2d 599 (1973); *Commonwealth v. Jacobs*, 247 Pa.Super. 373, 372 A.2d 873 (1977).

Appellant does not dispute the evidence that he engaged with the girls in the acts that have been described above but argues instead that at least with respect to Carolyn the deviate sexual acts were not involuntary. In support of this argument appellant emphasizes the evidence that Carolyn was paid for what she did and that she voluntarily returned to the apartment many times to receive money, cigarettes, and liquor.

■■■ While it is true that there was no evidence demonstrating that any of the girls was coerced by appellant, this does not aid appellant's argument because proof of coercion was not necessary. The Crimes Code provides that "[a] person commits a felony of the first degree when he engages in deviate sexual intercourse with another person . . . *who is less than 16 years of age.*" The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 3123(5) (emphasis added). Since Carolyn was only thirteen years of age, the fact that she may have consented to engaging in sexual acts with appellant does not preclude appellant's conviction for involuntary deviate sexual intercourse. *See Commonwealth v. Hughlett*, 249 Pa.Super. 341, 378 A.2d 326 (1977).

2

a

In *Commonwealth v. Wicks*, 265 Pa.Super. 305, 401 A.2d 1223 (1979), this court summarized the several responsibilities of a judge when imposing sentence. We said:

Under the Pennsylvania system of indeterminate sentencing, "[i]mposition of a proper sentence is a matter vested in the sound discretion of the trial court, whose determination is to be respected unless it constitutes a manifest abuse of discretion." *Commonwealth v. Valentin*, 259 Pa.Super. 496, 499–500, 393 A.2d 935, 937 (1978); *see Commonwealth v. Knight*, 479 Pa. 209, 212, 387 A.2d 1297, 1299; *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976). In imposing sentence the court "must not overlook pertinent facts, disregard the force of the evidence, commit an error of law . . . or inflict punishment exceeding that prescribed by statute." *Commonwealth v. Knight, supra*, 479 Pa. at 212, 387 A.2d at 1299; *see Commonwealth v. Lee*, 450 Pa. 152, 299 A.2d 640 (1973). The court must consider the character of the defendant and the particular circumstances of the offense in light of the legislative guidelines for sentencing, and must impose a sentence that is the minimum sentence consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. See The Sentencing Code, Act of Dec. 30, 1974, P.L. 1052, No. 345, 18 Pa.C.S. § 1321(b) (Supp.1977); *Commonwealth v. Knight, supra* ; *Commonwealth v. Riggins, supra.* [474 Pa. 115, 377 A.2d 140 (1977)].

In *Commonwealth v. Riggins, supra*, the Supreme Court of Pennsylvania held that to further compliance with these principles, the lower court must state on the record its reasons for the sentence imposed. *See Commonwealth v. Kostka*, 475 Pa. 85, 379 A.2d 884 (1977); *Commonwealth v. Bolyard*, 256 Pa.Super. 57, 389 A.2d 598 (1978). Thus in *Commonwealth v. Kostka, supra*, the Court vacated the sentence and remanded for resentencing because "the trial judge failed to articulate reasons for the sentence imposed reflecting *'weight' was accorded the statutory guidelines for sentencing.*" 475 Pa. at 90, 379 A.2d at 887. (emphasis added).

*Id.*, 265 Pa.Super. at 311, 401 A.2d at 1225–26.

Accordingly, we must determine whether here the sentencing judge fulfilled these responsibilities.

b

■ The first responsibility of the sentencing judge was to be sure that he had before him sufficient information to enable him to make a determination of the circumstances of the offense and the character of the defendant. *Commonwealth v. Wicks, supra.*

■ With respect to the circumstances of the offense: The evidence at trial disclosed that appellant showed sexually explicit movies to several girls and had sexual intercourse and deviate sexual relations with at least one of them for gifts of money, cigarettes, and liquor. While appellant argued at sentencing that his culpability was not great because the girls were or acted like prostitutes, the sentencing judge was free to reject this explanation.

With respect to the character of the defendant: The sentencing judge had the benefit of a full presentence report and two psychiatric reports regarding appellant's personality.

The presentence report contained some information that reflected very favorably on appellant's character, including the facts that although 57 years old, he had never been arrested; that he had been decorated during the Second World War; that he had a steady employment record; and that through his industriousness he had put himself through night school, obtained a real estate license, and amassed a considerable fortune and several real estate holdings, among them the Osborne Apartments. The report also discussed in some detail appellant's marital history. He was in his third marriage; the other two had ended in divorce. The author of the report offered the opinion that appellant's offense reflected inability to accept the aging process, and also, anger toward and fear of women and an attempt to control them. The author of the report recommended that appellant be placed on probation since the offense was appellant's first offense.

One psychiatric report was prepared by Dr. Richard Schwartzman, D.O. In his report Dr. Schwartzman com-

mented on the fact that appellant consistently maintained that the girls coaxed him into the sexual encounters and that he merely "bought what they were selling." Dr. Schwartzman diagnosed appellant as having a mixed personality disorder and stated that there was "a fair amount of sexual preoccupation underlying and a strong need for contact in this man. Angry and aggressive impulses are covered over and justified to himself." Dr. Schwartzman's specific recommendation to the sentencing judge was as follows:

There are no psychiatric contraindications to incarceration. If the Court decides to place this man on probation I would make it a long probation to deter him from similar future behavior. I do not recommend that he enter into any treatment programs because he does not see his actions as wrong, therefore he could not benefit from such programs.

The second psychiatric report was prepared by Jules DeCruz, M.S. Mr. DeCruz stated that appellant identified the female symbol "as being more aggressive and dominant than the male symbol," and that Rorschach testing indicated an "underlying negativity toward women and strong tendencies toward playing roles." Mr. DeCruz concluded that appellant was "certainly bright enough to benefit from treatment but the prognosis is guarded at best in light of strong denial and other intellectual defenses and seemingly well–ingrained thinking and behavior patterns."

Appellant made no objection to the contents of the psychiatric reports or to the conclusions reached by Dr. Schwartzman or Mr. DeCruz. He also made no objection to the qualifications of either man to offer a conclusion as to personality and his prospects for rehabilitation through treatment. Moreover, appellant offered no psychiatric testimony on his own behalf.

 In the absence of objection by appellant, the sentencing judge was free to consider the presentence report and the psychiatric reports.

c

The second responsibility of the sentencing judge was to evaluate the information regarding the circumstances of the offense and the character of appellant, and then to formulate and explain the sentence in light of the guidelines specified in the Sentencing Code. As we stated in *Commonwealth v. Wicks, supra* :

It is true, as the Commonwealth points out, that the court did have a pre-sentence report and did hear testimony concerning appellant's background, drug problem, and home life. *Testimony*, however, and the contents of a pre–sentence report, cannot constitute a statement of *reasons*; they rather constitute only the beginning of the process by which the court formulates its statement of reasons. Having received the testimony and pre–sentence report, the court must evaluate them; the testimony may well be in conflict, or not be credible, or otherwise not acceptable to the court, and the same may be so of the contents of the pre–sentence report. This evaluation completed, the court must examine the facts, as it has determined them to be in light of the statutory guidelines for sentencing. Then, and only then, should the court decide what sentence should be imposed. Finally, having made that decision, the court must state its reasons for the sentence.

265 Pa.Super. at 310, 401 A.2d at 1227 (emphasis in original).

Here, in sentencing appellant, the judge stated:

THE COURT: Mr. Clemente, as you addressed yourself–I say this to Mr. Doyle–as Mr. Clemente addresses himself to the question of the alleged participation in the so–called–or so–characterized participation of these young people in the activities in your apartment and indicates that they were willing and received certain remuneration, I think that he misconstrues the intention of the legislature with respect to particularly the statutory rape charges in that it is the activities of older people as exercised on the young and vulnerable, notwithstanding

any apparent willingness, that the legislature intended to stop. In my view, in this case I think that there was a prolonged and extended seduction of four vulnerable young girls, not with expressions of love or with gifts of money, but with a display of pornographic films, gifts of whiskey and cigarettes that to me did not appear to be the type of cash payment for a quid pro quo which Mr. Clemente describes on your behalf.

MR. CLEMENTE: Your Honor, if I may interrupt, it's one girl.

THE COURT: One girl as far as the statutory rape is concerned.

MR. CLEMENTE: Right.

THE COURT: I agree, but I, in those remarks, intended to talk about the corruption charges, also.

It is my view that the effect on these individuals must be very serious, beyond the commission of untoward acts, but, in all likelihood, to leave permanent scars on their psyches, and perhaps to leave them with residual feelings that they will carry with them to their own detriment for the rest of their lives.

In terms of the psychiatric report which has been referred to and the District Attorney's comments about the need to help Mr. Doyle, it has been observed and considered by me that Dr. Schwartzman said that he did not recommend that the defendant enter into any treatment programs because the defendant does not see his actions as wrong, and therefore he could not benefit from such programs. That's an observation that has to be given weight not only in terms of a sentence to be imposed, but in terms of Mr. Doyle's potential for rehabilitation.

Although the psychiatrist takes no position with respect to incarceration–that is to say, he does not recommend it–he does say that there are no psychiatric contra indications of such a sentence and infers, in the final paragraph of his recommendations, that there is a need to deter him from similar future behavior. It is my view, and I express it candidly, that he needs not only deterrence, but that the

interests of society call for a punishment in a series of events of this nature, and it is in the fulfillment of these responsibilities as I see them that I impose the following sentence:

On Bill 2717, I sentence you, Mr. Doyle, to eleven and a half to twenty–three months in prison; on Bill 2716, I sentence you to six and a half to thirteen months in prison, consecutive to the sentence imposed on Bill 2717; on Bill 2718, I sentence you to six and a half to thirteen months in prison, concurrent with the sentence imposed on Bill 2716; on Bill 800, I sentence you to five years probation, concurrent with the sentence imposed on Bill 2717; and on Bill 802, I sentence you to five years probation, concurrent with the sentence imposed on Bill 2717.

N.T. Sentencing at 17–20.

This statement reflects an evaluation by the sentencing judge of the information before him. Thus the judge rejected appellant's explanation that the girls were or acted like prostitutes, instead concluding from the trial evidence that appellant had seduced the girls. Also, the judge indicated his acceptance of Dr. Schwartzman's evaluation of appellant's personality. We still must ask, however, whether, having completed his evaluation of the information before him, the judge examined the facts, as he had determined them to be, in light of the guidelines specified in the Sentencing Code.

█ It is apparent that in stating the reasons for his sentence, the judge did not specifically cite to the guidelines in the Sentencing Code. The preferred procedure is for the sentencing judge to explain, with reference to the facts as he has found them, why he believes particular guidelines in the Code require, or support, his sentence. By such specific citation to the guidelines the judge can better assure both himself and the appellate court, as well as the defendant and the Commonwealth, that he has fulfilled the responsibilities imposed upon him by the Code. *See Commonwealth v. Wicks, supra,* 265 Pa.Super at 314 n. 7, 401 A.2d at 1227 n. 7. So far, however, we have not held that specific citation to

the guidelines is essential. Instead, in the absence of such citation we have examined the record to determine for ourselves, if we can, whether the sentencing judge followed the guidelines.

The Sentencing Code provides several possible dispositions of criminal defendants, including probation, total confinement, and partial confinement (the Sentencing Code's term for work release). As noted, here the judge sentenced appellant both to probation and to total confinement.

In appraising the propriety of a sentence of probation alone without any confinement, the judge was obliged to accord weight to the factors set forth in section 1322 of the Code. These factors are:

§ 1322. Order of probation

The following grounds, while not controlling the discretion of the court, shall be accorded weight in favor of an order of probation:

(1) The criminal conduct of the defendant neither caused nor threatened serious harm.

(2) The defendant did not contemplate that his conduct would cause or threaten serious harm.

(3) The defendant acted under a strong provocation.

(4) There were substantial grounds tending to excuse or justify the criminal conduct of the defendant, though failing to establish a defense.

(5) The victim of the criminal conduct of the defendant induced or facilitated its commission.

(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained.

(7) The defendant has no history of prior delinquency or criminal activity or has led a law–abiding life for a substantial period of time before the commission of the present crime.

(8) The criminal conduct of the defendant was the result of circumstances unlikely to recur.

(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime.

(10) The defendant is particularly likely to respond affirmatively to probationary treatment.

(11) The confinement of the defendant would entail excessive hardship to him or his defendants. [*sic*]

(12) Such other grounds as indicate the desirability of probation.

18 Pa.C.S. § 1322.

Of these factors, factor 7 plainly indicated the propriety of a sentence of probation alone without confinement, as appellant had never before been arrested. Several of the other factors, however, equally plainly indicated that a sentence of probation alone would be inappropriate. The sentencing judge rejected appellant's explanation that the girls were prostitutes who induced him to commit the offenses, instead finding that appellant had been the moving force, and had engaged in a "prolonged and extended seduction of four vulnerable young girls." This finding necessarily implied the further finding that appellant's conduct was neither provoked, excused, nor induced by the girls' conduct. We may therefore conclude that the judge found that factors 3, 4, and 5 militated against a sentence of probation alone. The judge's statement that the "effect of these individuals [the girls] must be very serious [and would] perhaps leave them with residual feelings that they will carry with them to their own detriment for the rest of their lives" reflects a concern that the girls, especially Carolyn, might have suffered some psychological harm. We may therefore conclude that the judge found that factors 1 and 6 also militated against a sentence of probation alone. The judge's reference to Dr. Schwartzman's psychiatric report and the recommendation in that report, that because of his attitude appellant could not benefit from treatment, supports the conclusion that the judge found that factors 9 and 10 militated against a sentence of probation alone. The judge's reference to Dr. Schwartzman's statement that future criminal behavior was possible supports the conclusion that the judge found that factor 8 militated against a sentence of probation alone. Finally, the judge's reference to Dr. Schwartzman's

statement that there were "no psychiatric contraindications to incarceration" supports the conclusion that the judge rejected any claim to probation alone based on factor 11.

■ The factors enumerated in Section 1322 of the Sentencing Code were not the only guidelines that the sentencing judge was obliged to consider. Having decided not to impose a sentence of probation alone, the judge "was next obliged to consider whether total confinement as opposed to partial confinement was appropriate." *Commonwealth v. Wicks, supra,* 265 Pa.Super. at 312, 401 A.2d at 1226, *citing, Commonwealth v. Kostka, supra* 475 Pa. at 91, 379 A.2d at 887. The guidelines applicable to that decision are stated in Section 1325 of the Sentencing Code:

The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:

(1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;

(2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution or

(3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

18 Pa.C.S. § 1325.

In sentencing appellant to total confinement, the judge referred to the nature and circumstances of the crimes and to Dr. Schwartzman's report, stating that "there is a need to deter [appellant] from similar future behavior. It is my view, and I express it candidly, that he needs not only deterrence, but that the interests of society call for a punishment in a series of events of this nature." The judge's use of the word "punishment" was unfortunate because ambiguous; the judge might be understood as expressing the belief that he should wreak some sort of vengeance upon appellant. We do not believe, however, that this would be a fair

interpretation of the judge's statement. When the statement is read in context, it seems to us to refer to the third guideline specified in section 1325. In other words, it seems to us that the judge was expressing the opinion that any "lesser sentence [than total confinement] would depreciate the seriousness of the crime" in that appellant would not be deterred from again engaging in such conduct, and also, neither would other members of society who might be tempted to engage in such conduct be deterred.

The judge also referred to Dr. Schwartzman's fear of appellant's future behavior, and to appellant's attitude as adversely affecting his prospects for rehabilitation. These statements indicate that the judge considered the first guideline specified in Section 1325.

We therefore cannot say that in imposing sentence, the judge failed to consider the circumstances of the offense, the character of the defendant, and the guidelines specified in the Sentencing Code. *See Commonwealth v. Valentin, supra* (sentencing judge's statement of reasons did not specifically cite to Sentencing Code but adequately reflected balancing of all relevant factors). While a more detailed statement by the judge, with specific reference to the guidelines, would have been preferable, still, when the judge's statement is read as a whole, it reflects that " 'weight' was accorded the statutory guidelines for sentencing." *Commonwealth v. Wicks, supra,* 265 Pa.Super. at 311, 401 A.2d at 1226, *quoting Commonwealth v. Kostka, supra* 475 Pa. at 90, 379 A.2d at 887.

d

The only remaining question is whether the sentencing judge committed " 'a manifest abuse of discretion.' " *Commonwealth v. Wicks, supra,* 265 Pa.Super. at 310, 401 A.2d at 1225, *quoting Commonwealth v. Valentin, supra* 259 Pa.Super. at 499–500, 393 A.2d at 937. We have considered appellant's argument that the judge might have attached more weight to appellant's age and spotless record. Nevertheless, when we consider the facts of the crimes, appellant's

refusal to admit that he was wrong, and the psychiatric reports, we cannot say either that a sentence of total confinement was unwarranted, or that the length of the sentence was manifestly excessive.

On page 3 of his supplemental brief appellant's counsel states that appellant has not been involved in any criminal activity during the two years since his sentences were imposed. Counsel urges that the case be remanded so that this fact may be considered by the sentencing judge. Counsel also suggests that new psychiatric and presentence reports might be presented to the judge.

Initially, it is necessary to note that we must decide a case on the basis of the facts of record. We cannot accept as fact a statement that appears only in a party's brief. *In the Interest of Carroll*, 260 Pa.Super. 23, 27 n. 4, 393 A.2d 993, 995 n. 4 (1978). For purposes of discussion, however, we may put this consideration aside, and assume that appellant has not been involved in any criminal activity since his sentences were imposed, and further, that another psychiatric examination and presentence report would be more favorable to appellant than those of record. Still, our power of review would not be expanded. In a child custody case it may be appropriate for us to note that an order granting custody is temporary and "subject to such change as changed conditions may require." *McCann v. McCann*, 270 Pa.Super. 171, at 178, 411 A.2d 234, at 237–238. A judgment of sentence, however, is a final decision. We may only order reconsideration where the sentencing judge has failed in his duties, either in a procedural sense, as for example by failing to state the reasons for the sentence, or in a substantive sense, by imposing a manifestly excessive sentence. Moreover, in deciding whether the judge has failed in his duties, we may consider only the record as it appeared to the judge when he imposed the sentence. Appellant's behavior after sentencing is therefore not relevant.

That portion of this court's order of March 16, 1979, vacating appellant's sentences and remanding for resentencing is hereby vacated, and appellant's sentences are affirmed.

VAN der VOORT, J., joins in the majority opinion by SPAETH, J.

PRICE, J., files a concurring opinion in which VAN der VOORT, J., joins.

JACOBS, J., former President Judge, did not participate in the consideration or decision of this case.

PRICE, Judge, concurring:

Several interesting and not altogether wholesome developments have been reflected in our decisions since our supreme court ordered us to operate in panels. One such concern is the increasingly fine web we are spinning around trial courts as regards sentencing procedures. In *Commonwealth v. Wicks*, 265 Pa.Super. 305, 401 A.2d 1223 (1979), for example, this court remanded the case for resentencing on the basis that the sentencing judge failed to adhere to the mandates of *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977). Although Judge Spaeth in *Wicks* noted that this court has never required the sentencing judge to specifically cite or utilize the exact language of the Sentencing Code, the result strongly intimated that such a practice would be all but required unless, on appeal, this court could glean from the words of the trial court that the Code was indeed considered. Instantly, the majority reiterates and enlarges on the technicalities of sentencing, resolutely marching, to a cadence set by *Wicks*, down a path which must eventually lead to a requirement that a sentencing judge quote chapter and verse of the Sentencing Code in order to satisfy our standard. As I was not on the *Wicks* panel, I had no voice in its outcome, although I harbored grave doubts as to its rationale. Here, however, I am permitted a word on the tortured course the majority travels, and that word is "ridiculous." I do not read *Commonwealth v. Kostka*, 475 Pa. 85, 379 A.2d 884 (1977), *Commonwealth v. Riggins, supra,* and other authority from our supreme court to require such a super–technical approach.

Clearly, I agree, that on the facts of this appeal, the judgment of sentence should be affirmed. In my view, the

392

trial judge went well beyond that which was required of him.

VAN der VOORT, J., joins in this concurring opinion.